IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ROBERT SAMUEL RIVERS, JR.,

       Plaintiff,

v.                                CASE NO. 1:16-cv-40-WTH-GRJ

JOSHUA DONAWAY, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

       This matter is before the Court on ECF No. 39, Defendant Vicky
Johnson's Motion for Summary Judgment, and ECF No. 44, Defendants
Bevis, Donaway, and Lambert's Partial Motion for Summary Judgment.
Plaintiff has not filed responses in opposition and the time for doing so has
expired. The motions for summary judgment are, therefore, ripe for review.
For the reasons discussed below, the motions should be granted and all
claims should be dismissed.

## I.  BACKGROUND

       Plaintiff initiated this case on February 15, 2016, by filing a *pro se*
complaint under 42 U.S.C. § 1983. (ECF No. 1.) He later filed an amended
complaint on March 3, 2016, bringing claims against: (1) Officer Joshua

Donaway; (2) Captain D. Bevis; (3) Sergeant Lambert; and (4) Nurse

Johnson. (ECF No. 7.) Plaintiff claims Defendants violated his Eighth

Amendment rights and that Defendants Donaway, Bevis, and Johnson

violated his Fourteenth Amendment rights. For relief Plaintiff seeks

compensatory, punitive, and nominal damages.

Nurse Johnson filed her motion for summary judgment on September

21, 2016, and attached various evidence in support of her motion. (ECF

No. 39.) The Court issued a summary judgment notice and sent it to the

mailing address on file for Plaintiff—Central Florida Reception Center

("CFRC"). The notice was returned to the Court on October 6, 2016 as

undeliverable because Plaintiff had been released from custody on August

28, 2016. (ECF No. 43.)[1] The Clerk re-mailed the summary judgment

notice to the residential address on file with the Florida Department of

Corrections ("FDOC"). (*Id.*) Nothing on the docket evidences that the

mailing was returned to the Court.

Then on October 17, 2016, Captain Bevis, Officer Donaway, and

Sergeant Lambert filed their motion for partial summary judgment with

---

[1] The Court sent Plaintiff a pro se notice upon receiving his complaint, which advised him he must notify the Clerk's office in writing of any change in his mailing address by filing a notice of change of address. (ECF No. 3 at 2.) Plaintiff, however, did not file a notice with the Court updating his address upon release.

evidence supporting their motion. (ECF No. 44.) The Court issued another summary judgment notice, informing Plaintiff that he must file a response to the motion and any evidentiary materials by November 16, 2016. (ECF No. 45.) Nothing on the docket evidences that the mailing was returned to the Court.

Because Plaintiff had not responded to either of the motions for summary judgment the Court issued an order to show cause on February 1, 2017, directing Plaintiff to file a response by February 21, 2017. (ECF No. 47.) The order was mailed to the new residential address on file with the FDOC. On February 13, 2017, however, the mailing was returned to the Court with the notation "Not Deliverable as Addressed – Unable to Forward." (ECF No. 49.)

On April 11, 2017,  the Court entered an order informing Plaintiff that he,

> has an obligation to respond to the motions for summary judgment, which have been pending now for six months. Likewise, as Plaintiff was informed when he originally initiated this case, he also has an obligation to update the Court regarding any changes in his mailing address. Plaintiff has failed to fulfill either of these obligations. The Court is not inclined to waste its scarce and valuable resources ruling on the pending motions for summary judgment—both of which appear to be well-taken—if Plaintiff has decided not to participate in this case.

(ECF No. 52 at 3.) The Court ordered Plaintiff to provide (1) notification to the Clerk's office, in writing, of his change of address, (2) a statement that he has not abandoned his case, and (3) responses to the pending motions for summary judgment no later than April 25, 2017. (*Id.*) Plaintiff was advised that failure to do so would result in a recommendation to the district judge that the motions for summary judgment be granted and the case be dismissed for failure to obey an order of the Court and for failure to prosecute. (*Id.*) The order was mailed to Plaintiff at both of the aforementioned residential addresses and, in an abundance of caution, the FDOC.

Only one of the orders mailed to the residential address was returned (as not deliverable as addressed - unable to forward). The copy mailed to the FDOC was also returned (inmate released or transferred - stop mailing - return to sender). (ECF Nos. 53–54.) Despite one of the orders not being returned, as of the date of this report and recommendation Plaintiff has failed to respond.

Rule 56(e) of the Federal Rules of Civil Procedure provides in relevant part:

> [i]f a party fails to properly support an assertion of fact or fails
> to properly address another party's assertion of fact as required
> by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;
(2) consider the fact undisputed for purposes of the motion;
(3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
(4) issue any other appropriate order.

In this case, Plaintiff has not submitted any evidence in opposition to summary judgment.    Although Plaintiff did not submit any evidence in response to the motions for summary judgment, Plaintiff's complaint is signed under penalty of perjury. (ECF No. 62.) Thus, the complaint is properly treated by the Court like a sworn affidavit. *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[T]his Court has recognized that facts alleged in an inmate's sworn pleading are sufficient [to defeat a properly supported motion for summary judgment] and that a separate affidavit is not necessary."); *cf. Henderson v. Cherry*, No. 5:08cv283/RS/EMT,  2010 WL 1257487, at *1 n.2 (N.D. Fla. Mar. 16, 2010) (declining to consider plaintiff's response to defendant's motion for summary judgment as evidence because the response was not made under penalty of perjury). Accordingly, Plaintiff's sworn allegations in his complaint may be considered in ruling on the motion for summary judgment.

## II.  EVIDENCE

The material facts as discerned from the evidence on file discloses the following details.

On March 6, 2015, Plaintiff went to the single dose pick-up by the center gate to receive his medications. (ECF No. 7 at 6 ("Compl.").) A staff member told Officer Donaway that another inmate was in line to sneak his pills to his lover, Plaintiff. (*Id.*) Plaintiff alleges that Officer Donaway made derogatory references to Plaintiff's sexual orientation and stated that he should lock up Plaintiff and the other inmate. (*Id.*) Officer Donaway demanded to see Plaintiff's single dose pass and said "I should spray your punk ass." (*Id.*) officer Donaway asked why Plaintiff took medication. (*Id.*) After Plaintiff answered Officer Donaway's question, Officer Donaway told Plaintiff he should be shot and that his day was coming. (*Id.* at 7.)

The next day, March 7, 2015, at approximately 1:08 p.m., Plaintiff was at the center gate by Officer Donaway. (Compl. at 7; ECF No. 44-1 at 1 ("Report").) There is dispute as to what happened next.

Plaintiff says Officer Donaway ordered Plaintiff out of line. (Compl. at 7.) Plaintiff started walking towards Officer Donaway and asked what he did wrong. (*Id.*) Officer Donaway broke the seal on his chemical agent and Plaintiff stopped. (*Id.*) Officer Donaway approached Plaintiff and said "I

know you got a lot going on so I am just going to place you in confinement for disrespect to official." (*Id.*) Then, without provocation or warning, Officer Donaway sprayed Plaintiff in the face and upper body with the chemical agent. (*Id.*)

According to a Use of Force Report completed by Officer Donaway later that day, however, Officer Donaway says that Plaintiff refused to submit to hand restraints then advanced towards Officer Donaway in an aggressive manner with his right fist clenched. (Report at 1.) Officer Donaway administered chemical agents to Plaintiff's head and facial area in an effort to gain his compliance. (*Id.*)

Plaintiff refused to comply, however, so Officer Donaway grasped Plaintiff's left wrist with Officer Donaway's left hand and placed his right hand on the back of Plaintiff's left shoulder area, forcing Plaintiff face down on the sidewalk. (Report at 1; ECF No. 44-5 at 78:4–6 ("Pl. Dep.").) Plaintiff hit his head, hip, leg, and lower back on the pavement. (Compl. at 8; Pl. Dep. 78:6–8.) Plaintiff then complied with orders and was placed in hand restraints. (Report at 1.) Officer Donaway yelled to Sergeant Lambert—who was watching—to call in the incident as an assault or attempted assault. (Compl. at 8.) Plaintiff says he was left laying handcuffed on the pavement for twenty minutes with the chemical agent in

his eyes and on his skin while they waited for the camera. (*Id.*)

Plaintiff showered at approximately 1:18 p.m., ten minutes after the use of chemical agents and force. (Report at 1; ECF No. 39-9, ¶ 6 ("Johnson Aff.").) Plaintiff was issued clean clothing and evaluated by Nurse Johnson at approximately 1:42 p.m. (Report at 1.) Plaintiff was placed in a secure decontaminated cell after the evaluation. (*Id.*)

The next day Plaintiff woke up burning and in excruciating pain. (Compl. at 9; Pl. Dep. 79:14–20.) His hip, leg, and lower back hurt. (Compl. at 9; Pl. Dep. 79:12–13.) He could not move. (*Id.*) He also had bruising and a minor scratch above his left eyebrow. (*Id.* 79:20–24.) The burning pain lasted two to three days. (*Id.* 79:17–19.)

Plaintiff was issued three disciplinary reports the same day as the use of force incident charging him with: (1) assault or attempted assault on a correctional officer (ECF No. 44-2 at 1 ("DR1")); (2) disobeying a verbal or written order (ECF No. 44-3 at 1 ("DR2")); and (3) disrespect to officials, employees, or other person of constituted authority expressed by means of words, gestures, and the like (ECF No. 44-4 at 1 ("DR3")). Plaintiff says Officer Donaway fabricated the statements of fact to justify his actions. (Compl. at 10.) Nonetheless, Plaintiff was found guilty on March 10, 2015, of all three charges. (DR1 at 1; DR2 at 1; DR3 at 1; Compl. at 11.) He was

sentenced to 120 total days in disciplinary confinement for all three offenses. (DR1 at 2; DR2 at 2; DR3 at 2.).

At some point while in disciplinary confinement, Officer Donaway told Plaintiff that Captain Bevis told Officer Donaway to spray Plaintiff and put Plaintiff in confinement. (Compl. at 12.)

### *Medical Care*

Nurse Johnson is a registered nurse ("RN") employed by Centurion of Florida as an RN at Mayo CI. (Johnson Aff. ¶ 2.) Nurse Johnson documented Plaintiff's condition when she examined him post-use-of-force. (*Id.* ¶ 5; ECF No. 39-10 at 1 ("MR").)

According to Nurse Johnson, Plaintiff arrived at medical ambulatory, alert, oriented, and responded to questions verbally. (Johnson Aff. ¶ 6; MR at 1.) Plaintiff's vital signs were normal. (*Id.*) Plaintiff says he told Ms. Johnson that his left hip, the back of his head, right arm, and lower back hurt. (Compl. at 9.) According to Nurse Johnson, however, Plaintiff made no complaints of injuries and he had no visible injuries. (Johnson Aff. ¶¶ 5–6; MR at 1–2.) Nurse Johnson advised Plaintiff to contact medical if necessary. (Johnson Aff. ¶ 6; MR at 1.)

Nurse Johnson evaluated Plaintiff's status again in confinement on March 21, 2015. (Johnson Aff. ¶ 7; MR at 4.) Plaintiff stated he was not

suicidal but was angry that he received 120 days confinement for something he did not do. (*Id.*) Although Plaintiff did not complain of any physical injuries, he did say that he wanted a mental health referral. (*Id.*) Accordingly, Nurse Johnson submitted a mental health referral for Plaintiff. (*Id.*) Nurse Johnson avers she did not disregard Plaintiff's serious medical needs after the use of force because he had no serious medical needs at that time. (Johnson Aff. ¶ 17.)

Another nurse examined Plaintiff on March 23, 2015, and also found Plaintiff had no injuries. (Johnson Aff. ¶¶ 5, 8; MR at 5; ECF No. 44-10, ¶ 1 ("Maier Dec.").)[2] His vital signs were normal and he arrived ambulatory, was alert, oriented, and responded to questions verbally. (Johnson Aff. ¶ 8; MR at 5.) There were no injuries, bruises, swelling, redness, pain, tenderness, abrasions, scratches, or skin breaks present. (Johnson Aff. ¶ 8; MR at 5–6.)

Plaintiff did not request medical care again until five months later when he submitted a sick call for complaints of back pain that began in the past month due to the March 2015 use of force incident. (Johnson Aff. ¶¶ 5, 9–10; MR at 7.) Plaintiff was provided a bed rest lay-in for three days

---

[2] Albert Carl Maier, M.D., is employed with the FDOC as Senior Physician for the FDOC Central Office. (Maier Dec. ¶ 1.) Plaintiff's medical records were also attached to Dr. Maier's declaration in support of Defendants Bevis, Donaway, and Lambert's motion for partial summary judgment. (ECF No. 44-10.)

and ibuprofen, and was scheduled for an x-ray of the lumbar spine. (Johnson Aff. ¶ 10; MR at 9–11.)

Plaintiff had x-rays taken of the lumbar spine on August 27, 2015. (Johnson Aff. ¶ 11; MR at 12.) The x-rays showed a mild curvature of the spine and mild lumbar facet arthropathy, with no fractures or subluxation, thus evidencing degeneration or arthritis in the facet joints in the lower back. (*Id.*) Lumbar facet arthropathy (back arthritis) is a very common finding that occurs naturally with age-related wear and tear. (Johnson Aff. ¶ 11; Maier Dec. ¶ 5.)

Dr. Solorzano informed Plaintiff of the x-ray results on September 8, 2015. (Johnson Aff. ¶ 12; MR at 14.) Upon examination, there was no apparent deformity and Plaintiff was able to walk on his heels and toes. (*Id.*) Dr. Solorzano assessed Plaintiff with chronic lower back pain/strain and prescribed Clinoril, a nonsteroidal anti-inflammatory medication. (*Id.*)

Plaintiff returned to see Dr. Solorzano on October 21, 2015, complaining of back pain. (Johnson Aff. ¶ 13; MR at 20.) Plaintiff sought to renew his passes related to lower back pain and to renew the Clinoril. (*Id.*) On December 4, 2015, however, Dr. Cabrero declined to renew the Clinoril because it was not related to a condition for which Plaintiff was being seen in the chronic care clinic. (Johnson Aff. ¶ 13; MR at 21.)

Plaintiff continued submitting sick call requests for complaints of back pain. (Johnson Aff. ¶ 14; MR at 22-26, 28–31, 33–34.)[3] He was seen by nursing staff and provided ibuprofen and analgesics when necessary. (*Id.*)

In March 2016, Dr. Cabrero submitted a consultation request for Plaintiff to have a lumbar spine MRI. (Johnson Aff. ¶ 14; MR at 38.) The lumbar spine MRI revealed normal findings. (Johnson Aff. ¶ 15; MR at 39–41.)

Plaintiff was transferred from Mayo CI to Lake Correctional Institution on May 341, 2016. (Johnson Aff. ¶ 16; MR at 43.) A subsequent MRI of the lumbar spine was also normal. (Johnson Aff. ¶ 16; MR at 47.) No medical provider has ever found that Plaintiff suffered any injuries as a result of the use of force on March 7, 2015. (Johnson Aff. ¶ 5; Maier Dec. ¶ 7.)

### *Grievances*

Plaintiff filed an informal grievance on March 8, 2015 based on Officer Donaway's use of force. (Compl. at 4, 9.) The grievance was denied. (*Id.* at 4.)

Sometime between March 10 and 15, 2015, Captain Bevis told Plaintiff he took care of Plaintiff's grievance and threatened Plaintiff not to

---

[3] Plaintiff also has a pre-existing seizure disorder, for which Plaintiff presented to medical several times for seizure-related problems and medications. (Maier Dec. ¶ 6, pgs. 49–57.)

file any more grievances. (*Id.* at 11; Pl. Dep. 91:4–8, 93:1–3.) Captain

Bevis told Plaintiff he better stop writing grievances or he would make it

hard for Plaintiff, strip him of his property, and put him on restriction. (Pl.

Dep. 94:3–9.) Plaintiff did not appeal the denial of his March 8, 2015

informal grievance because of Captain Bevis' threats. (Compl. at 4.)

Plaintiff no longer wrote any grievances after that and moved to filing

appeals directly with the Office of the Secretary of the FDOC. (*Id.* at 11; Pl.

Dep. 94:13–19.)

On March 12, 2015, Plaintiff filed a grievance directly with the Office

of the Secretary of the FDOC, noting that the grievance was one "of a

sensitive nature." (ECF No. 44-6 at 2 ("GRV 1").)[4] Plaintiff claimed Officer

Donaway attacked Plaintiff because of Plaintiff's sexual preference and

then issued the three disciplinary reports to cover up the attack. (*Id.* at 2.)

Plaintiff's grievance was denied because the subject of his grievance was

already under review by staff and at the conclusion of that review,

appropriate and necessary action would be taken. (*Id.* at 1.)

Then on March 17, 2015, Plaintiff filed three grievances with the

warden, appealing the disciplinary report decisions for all three of his

---

[4] This same grievance was filed in support of Nurse Johnson's motion for
summary judgment. (ECF No. 39-6.)

offenses. (ECF No. 44-7 at 4 ("GRV 2"); ECF No. 44-8 at 4–5 ("GRV 3"); ECF No. 44-9 at 3–4 ("GRV 4").)[5] Plaintiff's grievances were denied. (GRV 2 at 3; GRV 3 at 6; GRV 4 at 6.) Although Plaintiff appealed all three denials to the Office of the Secretary, his appeals were also denied. (GRV 2 at 1–2; GRV 3 at 1–3; GRV 4 at 1–2.)

On April 26, 2015, Plaintiff filed a grievance directly with the Office of the Secretary stating that he wrote "sensitive nature" on his March 12, 2015 grievance to the Office of the Secretary because Mayo CI is known for having grievances disappear and for retaliating against inmates who file grievances. (ECF No. 39-7 at 1 ("GRV 5").) He asserted that he was "not in fear of [his] life here at Mayo C.I. (Annex)." (*Id.*) The appeal was returned without action because the grievance/appeal process is not to be utilized for correspondence purposes. (*Id.* at 2.)

Alan McManus, Chief of Policy Management and Inmate Appeals with the FDOC, avers that since January 1, 2015, Plaintiff has not filed any grievances related to the lack of medical care after the alleged assault on March 7, 2015. (ECF No. 39-1, ¶¶ 15, 20 ("McManus Aff.").)

---

[5] These same grievances were filed in support of Nurse Johnson's motion for summary judgment. (ECF Nos. 39-5, 39-4, 39-5.)

### III.  STANDARD OF REVIEW

In accordance with Rule 56(a), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988.) But, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (internal quotations and citations omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (to defeat summary judgment "there must be evidence on which the jury could reasonably find for the plaintiff") "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988) ("The summary judgment standard requires that we resolve all reasonable doubts in favor of the non-moving

party, but it does not require us to resolve all doubts in such a manner.").

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987.) The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005.)

In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage." *Beard v. Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact.

*See, e.g., Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001.)

## IV.  DISCUSSION

Plaintiff claims Officer Donaway (1) subjected Plaintiff to cruel and unusual punishment via threats causing fear of harm, and (2) used excessive force against Plaintiff. (ECF No. 7 at 13.) Plaintiff also claims Captain Bevis, Sergeant Lambert, and Nurse Johnson were deliberately indifferent to his serious medical needs after the use of force. (*Id.*) Finally, Plaintiff alleges Defendants Donaway, Bevis, and Johnson denied him equal protection under the Fourteenth Amendment. (*Id.* at 14.)

Defendants Donaway, Bevis, and Lambert argue they are entitled to summary judgment because they are entitled to Eleventh Amendment immunity in their official capacities, Plaintiff failed to exhaust his administrative remedies with respect to Defendants Bevis and Lambert, and Plaintiff is not entitled to compensatory or punitive damages. (ECF No. 44.) Nurse Johnson argues she is also entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies with respect to his claims against her and because the evidence demonstrates she was not deliberately indifferent to Plaintiff's serious medical needs. (ECF No. 39.)

## 1.  Exhaustion

The Prison Litigation Reform Act ("PLRA") requires a prisoner to
exhaust all available administrative remedies before filing an action
challenging prison conditions. "This requirement is a 'pre-condition to suit'
that must be enforced even if the available administrative remedies are
'futile or inadequate.'" *Logue v. Pearson,* No. CV410-240, 2011 U.S. Dist.
LEXIS 66950, at *2–3 (S.D. Ga. 2011) (citing *Harris v. Garner,* 190 F.3d
1279, 1285–86 (11th Cir. 2005))*.* Exhaustion is mandatory under the
PLRA, and unexhausted claims are not permitted. *Jones v. Bock,* 549 U.S.
199, 211 (2002)*.*

Further, the PLRA's exhaustion requirement contains a procedural
default component; prisoners must comply with the applicable deadlines,
or good-cause standards for failure to comply, contained in the
administrative grievance procedures. *Johnson v. Meadows*, 418 F.3d 1152,
1158 (11th Cir. 2005). "'[A] prisoner who does not properly take each step
within the administrative process has failed to exhaust state remedies, and
thus is foreclosed by § 1997e(a) from litigating. . . . [T]o exhaust remedies,
a prisoner must file complaints and appeals in the place, and at the time,
the prison's administrative rules require.'" *Id*. (quoting *Pozo v. McCaughtry*,
286 F.3d 1022, 1024–25 (7th Cir. 2002)).

To exhaust administrative remedies in Florida, a prisoner in FDOC custody must complete the administrative review process established under regulations promulgated by the Secretary of the FDOC. Fla. Stat. Ann. § 944.09(1)(d) ("The department has authority to adopt rules ... to implement its statutory authority. The rules must include rules relating to ... [g]rievance procedures which shall conform to 42 U.S.C. § 1997e."). Under the administrative review process established by the Secretary of the FDOC, a prisoner must: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Secretary of the FDOC. *Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing Fla. Admin. Code Ann. §§ 33-103.001–103.019*). Once a prisoner has completed this process, he has properly exhausted his administrative remedies. *Id.*

> Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."

*Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008) (quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368–69 (9th Cir. 1988)). Deciding whether a claim is due to be dismissed for failure

to exhaust administrative remedies requires a two-step process as established in *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). *Myles v. Miami-Dade Cnty. Correctional & Rehab. Dep't*, 476 F. App'x 364, 366 (11th Cir. 2012) (even on a motion for summary judgment, the district court must apply the two-step *Turner* framework). The Court must first consider whether the plaintiff's and defendant's version of facts conflict, and if so, take the plaintiff's version of facts as true. *Id.*; *Turner*, 541 F.3d at 1082. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Turner*, 541 F.3d at 1082; *Whatley v. Warden*, 802 F.3d 1205, 1211–12 (11th Cir. 2015) (at first *Turner* step, district court must accept plaintiff's facts as true "and make the exhaustion determination on [plaintiff's] view of facts;" appellate review of results of first step is *de novo*). If the complaint is not subject to dismissal through the first step, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082; *Whatley*, 802 F.3d at 1213 (defendants' contention that plaintiff's exhibits were fabricated created a factual dispute that required explicit findings under the second *Turner* step; such findings are subject to review on appeal for clear

error);[6] *Myles*, 476 F. App'x 364 (vacating and remanding where district court considered whether plaintiff properly exhausted his administrative remedies using the summary judgment framework instead of treating plaintiff's allegations as true and making specific factual findings on disputed facts).

*Turner* also established, however, that an inmate is not required to grieve a "breakdown in the grievance process" because the PLRA only requires that a prisoner exhaust his "available administrative remedies." 541 F.3d at 1083-84 ("[I]t is possible for retaliation or the threat of retaliation to make administrative remedies unavailable to an inmate."). In the context of retaliation or threatened retaliation,

> a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy "unavailable," and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met: (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

---

[6] In *Whatley*, the Eleventh Circuit reversed the dismissal of a complaint for failure to exhaust because the record did not reflect whether the district court dismissed the case on the first or second step of *Turner*, and thus, the Court could not evaluate whether the district court's conclusions should be reviewed under the *de novo* standard of the first *Turner* step or the "clear error" standard of the second *Turner* step. 802 F.3d at 1213.

*Id.* at 1085. In order to successfully excuse a failure to exhaust, courts have generally concluded an inmate must allege more than just threats of retaliation, but instead must allege both such threats of retaliation as well as the use of physical force against the inmate in response to the filing of grievances. *See*, *e.g.*, *Hemphill v. New York*, 380 F.3d 680, 689 (2d Cir. 2004) (noting that if inmate was assaulted and threatened to keep him from complaining, exhaustion should be excused); *Kaba v. Stepp*, 458 F.3d 678, 684-86 (7th Cir. 2006) (exhaustion could be excused where prisoner was threatened with beating for filing grievances and threat was carried out).

Turning first to Defendants Bevis and Lambert, Plaintiff's and Defendants' version of facts do not conflict. Specifically, despite discussing the grievances he filed, Plaintiff made no allegations that he filed any grievances or appeals directly to the Office of the Secretary grieving either Defendant Bevis' or Defendant Lambert's actions in relation to the use of force incident or unequal treatment. Defendants Bevis and Lambert, however, have provided evidence demonstrating that none of the grievances or appeals Plaintiff filed pertain to them. Plaintiff has produced no evidence in response to demonstrate proper exhaustion. *See* Fed. R. Civ. P. 56(e)(1).

Moreover, although Plaintiff claims he did not file any more grievances because Captain Bevis threatened him, Plaintiff admits that he instead proceeded to file appeals thereafter directly with the Office of the Secretary. He also admits that he was not in fear for his life and that he was filing appeals directly to the Office of the Secretary to ensure his grievances were received and did not disappear at the institutional level. Plaintiff does not allege, however, that he filed appeals regarding Defendant Bevis or Defendant Lambert directly with the Secretary. Moreover, the only evidence of an appeal directly to the Secretary pertains to Officer Donaway. Accordingly, Plaintiff's failure to exhaust with respect to Defendants Bevis and Lambert cannot be excused and the claims must be dismissed.

With respect to Nurse Johnson, Plaintiff's version of facts and Nurse Johnson's version of facts also do not conflict. Although Plaintiff sets forth the grievances he filed in relation to his complaint, none of them pertain to Nurse Johnson or the alleged lack of medical care following the use of force incident or unequal treatment. Moreover, Nurse Johnson has produced evidence in the form of grievances and an affidavit of Mr. McManus establishing that Plaintiff did not properly exhaust his claims against Nurse Johnson with respect to medical care. Plaintiff has wholly

failed to produce any evidence to rebut this.

Furthermore, as with Defendants Bevis and Lambert, Plaintiff's failure to exhaust his claims against Nurse Johnson cannot be excused. Plaintiff admits he proceeded to file appeals directly with the Office of the Secretary despite the alleged threats, and the evidence confirms this. Plaintiff's claims against Nurse Johnson should therefore also be dismissed for failure to exhaust.[7]

## 2.  Eleventh Amendment

The Eleventh Amendment provides the concept of sovereign immunity. U.S. Const. amend. XI. Sovereign immunity prohibits a state or one of its agencies or departments from being sued in federal court unless the state consents. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). A suit against a state employee in an official capacity is a suit against the state for Eleventh Amendment purposes. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). Florida has not waived its sovereign immunity or consented to be sued in damage suits brought pursuant to § 1983, nor has it waived its sovereign immunity for constitutional torts.

---

[7] Exhaustion of administrative remedies is not generally an adjudication on the merits. *Bryant*, 530 F.3d at 1374. Because Plaintiff's claims against Defendant Bevis, Lambert, and Johnson are due to be dismissed without prejudice for failure to exhaust, the Court need not proceed to consider Plaintiff's claims against them on the merits.

*Gamble v. Fla. Dep't of Health & Rehabilitative Servs.,* 779 F.2d 1509, 1513 (11th Cir. 1986); *Hill v. Dep't of Corrections*, 513 So. 2d 129, 133 (Fla. 1987); Fla. Stat. § 768.28(18).

It is undisputed that Officer Donaway is a state employee.[8] Thus, to the extent Plaintiff's claims are against Defendant Donaway in his official capacities, the claims are barred by sovereign immunity. Accordingly, Officer Donaway is entitled to judgment as a matter of law on all claims asserted against him in his official capacity.

### 3.  Compensatory and Punitive Damages

Plaintiff is not entitled to compensatory or punitive damages on his claims against Officer Donaway. "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C. § 1997e(e). "[T]he physical injury must be more than de minimis, but need not be significant." *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999). Discomfort does not equate to physical

---

[8] Although Nurse Johnson also appears to be a state employee, she does not raise an Eleventh Amendment immunity argument in her motion for summary judgment. Furthermore, although Plaintiff's claims against Defendants Bevis and Lambert are due to be dismissed for failure to exhaust administrative remedies, even if Plaintiff had exhausted administrative remedies, Defendants Bevis and Lambert would be entitled to judgment as a matter of law on all claims asserted against them in their official capacities.

injury. *Dixon v. Toole*, 225 F. App'x 797, 799 (11th Cir. 2007).

Plaintiff says he experienced burning sensation for two to three days following exposure to the chemical agents, soreness the next day, a bruise, and a minor scrape over one eyebrow. Officer Donaway contends, however, that the medical records demonstrate Plaintiff suffered no injuries whatsoever. Nevertheless, even viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could conclude that Plaintiff's injuries were any more than de minimis. See *Mann v. McNeil*, 360 F. App'x 31, 32 (11th Cir. 2010) (plaintiff's claims for compensatory and punitive damages were barred by § 1997e(e) where plaintiff complained of vague injuries to his back and scrapes and marks on his knees and legs); *Parker v. Dubose*, No. 3:12cv204/MCR/CJK, 2013 WL 4735173, at *2 (N.D. Fla. Sept. 3, 2013) (concluding that plaintiff's black eye, bloody lip, scrapes, abrasion, and back pains did not amount to more than *de minimis* physical injury and were insufficient to meet § 1997e(e)'s physical injury requirement). Nor is there any evidence that Plaintiff somehow suffered any type of physical injury with respect to his claim that Officer Donaway denied him equal protection under the Fourteenth Amendment.

Furthermore, although Plaintiff claims he has ongoing back pain as a result of the use of force, the medical evidence demonstrates normal

imaging findings other than back arthritis. The undisputed evidence reveals

back arthritis is common and occurs naturally with age-related wear and

tear. There is simply no evidence establishing that Plaintiff has suffered

any back problems as a result of the use of force incident.

Considering Plaintiff's injuries are de minimis at best, he is not

entitled to compensatory or punitive damages. His claims against Officer

Donaway for compensatory and punitive damages are therefore due to be

dismissed.

## V.  FAILURE TO PROSECUTE AND COMPLY WITH A COURT ORDER

Finally, to the extent Plaintiff might be permitted to pursue his claims

against Officer Donaway in his individual capacity for nominal damages,

his claims are nonetheless due to be dismissed for failure to prosecute and

failure to comply with an order of the Court. Likewise, even if Plaintiff's

claims against Defendants Johnson, Bevis, and/or Lambert were not due

to be dismissed for failure to exhaust—or if the claims against Officer

Donaway in his official capacity and/or in his individual capacity for

compensatory and punitive damages were not due to be dismissed—

those claims would be dismissed for failure to prosecute and failure to

comply with an order of the Court.

A district court has the inherent authority to manage its own docket

"to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991). The Court may dismiss a claim if the plaintiff fails to prosecute it or comply with a court order. Fed. R. Civ. P. 41(b). "The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Court." *Durham v. Fla. East Coast Ry. Co.*, 385 F.2d 366, 367 (5th Cir. 1967).

Plaintiff has not filed anything in this case since July 8, 2016, when he filed a motion for appointment of counsel. (ECF No. 32.)[9] Ten months have passed, during which, Plaintiff repeatedly has failed to comply with Court orders and, apparently, has either failed to update his address on file with the Court or chosen to wholly ignore this case. This case cannot proceed when Plaintiff has clearly abandoned it. Accordingly, Plaintiff's claims are due to be dismissed for failure to prosecute and failure to comply with Court orders.

---

[9] The Court denied the motion for appointment of counsel on July 11, 2016, but advised Plaintiff the Court would nonetheless seek inquiries from any attorneys who may be interested in taking Plaintiff's case on a pro bono basis. (ECF No. 35.) Plaintiff was informed, however, that "in the meantime he must proceed with his case pro se. Plaintiff will not be granted any extensions of time based upon the Court's notice seeking representation inquiries. Should an attorney eventually enter a notice of appearance and need additional time to respond, the attorney would be entitled to file a motion for an extension of time." (*Id.*) No notice of appearance, however, was ever entered.

Case No: 1:16-cv-40-WTH-GRJ

## VI.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

1.      Defendant Johnson's motion for summary judgment, ECF No. 39, should be **GRANTED**.

2.      Defendants Bevis, Donaway, and Lambert's motion for summary judgment should be **GRANTED**.

3.      The remaining claims should be dismissed for failure to prosecute and failure to comply with an order of the Court, and the case should be closed.

**IN CHAMBERS** at Gainesville, Florida, this 4th day of May, 2017.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**